**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ROLLAN A. WILLIAMS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:13 CV 1903 CAS / DDN |
| | ) | |
| TROY STEELE, | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

This action is before the court upon the petition of Missouri state prisoner Rollan A. Williams for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) The matter was referred to the undersigned United States Magistrate Judge for a report and recommendation disposition pursuant to 28 U.S.C. § 636(b)(1).

## I. BACKGROUND

On July 10, 2008, in the Circuit Court of the City of St. Louis petitioner Williams was found guilty by a jury of one count of robbery in the first degree, one count of armed criminal action, and one count of unlawful use of a weapon. (Resp. Ex. B at 3–4, 88.) He was found not guilty of one count domestic assault in the third degree. (Id. at 4, 88.) Petitioner Williams moved for acquittal or new trial on July 31, 2008, which was denied on September 26, 2008. (Id. at 84–87.) On September 26, 2008, the circuit court sentenced petitioner to concurrent terms of thirty years imprisonment on the first two charges and seven years on the third charge. (Id. at 3-4, 89–91.)

On April 28, 2009, petitioner Williams, through counsel, appealed the verdict to the Missouri Court of Appeals, which affirmed his convictions on September 1, 2009. (Resp. Exs. C–E.) On October 13, 2009, petitioner Williams filed a 29.15 motion for

post-conviction relief in the circuit court, and counsel was appointed. (Resp. Ex. F at 1–2.) The circuit court denied his motion on July 13, 2010 and petitioner filed an appeal, through counsel, on August 23, 2010. (Id. at 2.) After the Missouri Court of Appeals partially remanded the case for an evidentiary hearing, the Missouri Supreme Court ordered the case transferred pursuant to article V, section 10, of the Missouri Constitution. Williams v. State, 386 S.W.3d 750, 752 (Mo. 2012) (en banc). On October 16, 2012, the Missouri Supreme Court affirmed the circuit court's denial of petitioner's motion. Id. at 751–52.

In denying petitioner's appeal, the Missouri Supreme Court described the facts, viewed in the light most favorable to the verdict, as follows:

> Williams and D.W. were married more than 10 years, but had separated. Williams came to D.W.'s house to retrieve some of his belongings. Williams and D.W. began arguing in the kitchen. At some point during the argument, Williams pulled a gun and held it to D.W.'s head. D.W.'s two adult sons, B.Z. and T.R., heard the argument and came into the kitchen. T.R. held a baseball bat. Williams point the gun at T.R. B.Z. asked what it would take for Williams to not kill D.W. Williams demanded $100. Williams left after stating that he was going to kill them all.

> Williams was found guilty by a jury of robbery in the first degree, § 569.020 armed criminal action, § 571.015, and unlawful use of a weapon, § 571.030. Williams was sentenced to 30 years' imprisonment by the circuit court.

Id. at 752.

On September 20, 2013, petitioner Williams filed the instant federal habeas petition under 28 U.S.C. § 2254. (Doc. 1.) Respondent filed his response to the order to show cause on December 16, 2013. (Doc. 16.) Petitioner filed a traverse to the response on June 2, 2014. (Doc. 19.) On July 15, 2014, this court granted petitioner's request (Doc. 22) to dismiss his fifth ground for relief. (Doc. 23.) On January 13, 2016, this case was referred to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1). (Doc. 34.)

## II.  PETITIONER'S GROUNDS FOR FEDERAL HABEAS RELIEF

Petitioner has four pending grounds for federal habeas relief:

(1)    The trial court erred by allowing the State to question potential jurors during voir dire about whether they would require certain physical evidence in order to convict.

(2)    The trial court erred in allowing jury deliberation to continue after the jury announced it was not in agreement on Counts One and Two.

(3)    The trial court counsel rendered constitutionally ineffective assistance by failing to call a potential witness, Earnest Basic.

(4)    His appellate counsel rendered constitutionally ineffective assistance by failing to challenge the sufficiency of the evidence regarding the charge of unlawful use of a weapon, because it was not adequately shown that the firearm was readily capable of lethal use.

(Doc. 1 at 2–5.)

Respondent contends (1) Grounds One, Two, and Three are procedurally barred as they were not properly raised in the Missouri courts (Doc. 16 at 9–10); (2) petitioner had not exhausted all available state remedies and, therefore, is procedurally barred (Id. at 11–12); (3) Ground Four is not properly before this court, and (4) all his grounds are without merit.  (Id. at 27–30.)  Furthermore, respondent avers that petitioner cannot show cause and prejudice to overcome either the procedural bar or the exhaustion requirements.  (Id. at 13–14.)  Respondent does not argue that any ground is barred by the applicable federal statute of limitations.  (See Id.)

## III.  EXHAUSTION AND PROCEDURAL BAR

Congress requires that state prisoners exhaust their state law remedies for claims made in federal habeas corpus petitions filed in district court under 28 U.S.C. § 2254. See 28 U.S.C. § 2254(b)(1)(A).  A state prisoner has not exhausted his remedies "if he has the right under the law of the State to raise, by any available procedure, the question presented."  28 U.S.C. § 2254(c).  Exhaustion in the sense that petitioner now has no remaining procedure for bringing a claim to the state court does not, however, satisfy the

federal statutory requirement.   Rather, a petitioner must have fairly presented the substance of each federal ground to the trial and appellate courts.  Anderson v. Harless, 459 U.S. 4, 6 (1982) (per curiam).  If he has not done so and has no remaining procedure for doing so, because he has defaulted on the legitimate requirements of the otherwise available procedures, any such ground for federal habeas relief is barred from being considered by the federal courts.  Grass v. Reitz, 643 F.3d 579, 584 (8th Cir. 2011); King v. Kemna, 266 F.3d 816, 821 (8th Cir. 2001) (en banc); Sweet v. Delo, 125 F.3d 1144, 1149–50 (8th Cir. 1997) (petitioner's failure to present a claim on appeal from a circuit court ruling raises a procedural bar to pursuing the claim in a habeas action in federal court).  In Missouri this includes presenting all possible issues on direct appeal and in post-conviction proceedings, including post-conviction appeal.[1]  See Flieger v. Delo, 16 F.3d 878, 885 (8th Cir. 1994).

Furthermore, both the factual and legal bases of the grounds must be presented; broad assertions without adequate facts do not preserve a matter for federal habeas review.  Osborne v. Purkett, 411 F.3d 911, 919 (8th Cir. 2005).  There is currently a split within the Eighth Circuit regarding a claim which was reviewed by the state courts only for plain error, because it was not properly raised below.  Compare Toney v. Gammon, 79 F.3d 693, 698–99 (8th Cir. 1996) (finding state plain error review results in a procedural default), with Sidebottom v. Delo, 46 F.3d 744, 759 (8th Cir. 1995) (reviewing for plain error after the Missouri Supreme Court did the same).  The Eighth Circuit clarified that when there are conflicting panel decisions, "the better practice normally is to follow the earliest opinion, as it should have controlled the subsequent panels that created the conflict."  T.L ex rel. Ingram v. United States, 443 F.3d 956, 960 (8th Cir. 2006).

---

[1] Motions under Missouri Supreme Court Rule 24.035, for convictions after a guilty plea, and Rule 29.15, for convictions after a trial, are the only available methods to challenge the effectiveness of trial or appellate counsel.  Mo. Sup. Ct. R. 24.035, 29.15.  "A Rule 29.15 motion cannot be used to obtain review of matters which were or should have been raised on direct appeal."  Osborn v. State, 370 S.W.3d 324, 327 (Mo. Ct. App. 2012).

Here, the first case considering a state's plain error review standard and its effect on a federal court's consideration of a state prisoner's habeas petition was in <u>Hayes v. Lockhart</u>, 766 F.2d 1247, 1253 (8th Cir. 2015).  There the Eighth Circuit held, "[t]he Supreme Court has refused to replace or supplement the 'cause-and-prejudice' standard with a plain –error inquiry.  The burden of justifying federal habeas relief for state prisoners is greater than the 'plain error' showing required on direct appeal."  <u>Id.</u> (internal citations omitted); <u>see also</u> <u>Pollard v. Delo</u>, 28 F.3d 887, 889 (8th Cir. 1994) ("[t]he consideration and rejection of the claim on the merits, however, does not erase the fact that the court specifically and clearly found that the claim was procedurally barred by [petitioner's] failure to comply with the procedural requirement of alleging specific facts concerning this claim in his Missouri Rule 29.15 motion for post-conviction relief."); <u>Feger v. Russell</u>, No. 4:13 CV 1767 CDP, 2014 WL 4659486, at *4 (E.D. Mo. Sept. 17, 2014).  Therefore, if a matter was only considered by the state court for plain error review, it is procedurally barred from review by this court.

Petitioner may avoid the procedural bar, if he can demonstrate legally sufficient cause for the default and actual prejudice resulting from it, or if he can demonstrate that failure to review the claim would result in a fundamental miscarriage of justice.  <u>Maples v. Thomas</u>, 132 S. Ct. 912, 922 (2012); <u>Coleman v. Thompson</u>, 501 U.S. 722, 749–50 (1991).

A.     Ground One

Petitioner argues in his first ground that the trial court abused its discretion when it allowed the State to ask in voir dire whether any potential juror would require production of the actual gun in order to find Williams guilty.  (Doc. 1 at 2.)  The transcript indicates the following,

> MS. SZCZUCINSKI:  Now in this case you've heard that the defendant is charged with unlawful use of a weapon and with armed criminal action, which is using a weapon.  Okay?  I have to tell you right now there is no gun that was recovered in this case.  Knowing that fact, is there anybody

here who says without seeing that gun myself, I cannot consider a verdict of guilty? I actually cannot.

MS. TAAFFE: Objection, your Honor, Commitment on the facts.

THE COURT: What's the objection?

MS. TAAFE: Commitment on the facts.

THE COURT: Could you ask the question in a different way. It's essentially the same question that you've been asking.

MS. SZCZUCINSKI: Is there anybody here would require me to produce a gun to consider a verdict of guilt?

(A show of hands)

MS. SZCZUCINSKI: Mr. January?

VENIREMAN JANUARY: Yeah. You've got to show me the gun.

MS. SZCZUCINSKI: So even if you believed a witness beyond a reasonable doubt, you have to see that gun?

VENIREMAN JANUARY: I need the gun.

THE COURT: Just so we understand this, I think what she's asking you is if the testimony comes out from witnesses that there was a gun used in this crime but the State cannot bring that gun into this courtroom, the State can bring witnesses into this courtroom to say that there was a gun, but the State does not have the gun for whatever reason, is there somebody who's going to say, you know what, I don't care about the instructions, I don't care about the burden of proof, you've got to produce that gun or I can't convict this man. That's going to be the question.

MS. SZCZUCINSKI: That's what you're saying, Mr. January?

VENIREMAN JANUARY: That's what I am saying.

MS. SZCZUCINSKI: I absolutely understand that. I know where you're coming from. So even if you believed a witness beyond a reasonable doubt, you've got to see that gun?

VENIREMAN JANUARY: I've got to see it.

MS. SZCZUCINSKI: And Miss Spears, you feel the same way?

VENIREMAN SPEARS: Uh-huh.

MS. SZCZUCINSKI: Anybody else in the jury box feel like they have to see that gun, even if they believe [a] witness' testimony beyond a reasonable doubt? Mr. Wilson?

VENIREMAN WILSON: Yes. The evidence yes.

MS. SZCZUCINSKI: How about in the chairs? On my left side? Miss Foehner?

VENIREMAN FOEHNER: I think that's part of the burden of proof. I think that's part of the whole thing. That's one thing that would make my judgment. If you can come up with a gun and presumably, allegedly -- you know what I'm saying? I would have to have the gun.

MS. SZCZUCINSKI: Okay. So let's talk about what we talked about Mr. Farr. Let's say that Mr. Farr was robbed and the guy ran away. Two weeks later he gets arrested. When he's arrested he doesn't have the gun. Okay? But Mr. Farr looks at him in a line-up and he says that's the guy who did it. And you believe Mr. Farr beyond a reasonable doubt. Are you still going to require that gun to consider a verdict of guilt?

VENIREMAN FOEHNER: Well, just like I said, without the gun, I'm going to have reasonable doubt. So the reasonable doubt is going to be there period.

MS. SZCZUCINSKI: Okay. So for you, without the gun, that's automatically a reasonable doubt?

VENIREMAN FOEHNER: Yeah.

MS. SZCZUCINSKI: Thank you, Miss Foehner. I saw a hand next to Mr. Farr. That's Mr. Goodman?

VENIREMAN GOODMAN: Correct.

MS. SZCZUCINSKI: Would you stand up for me. What's your feeling about that?

VENIREMAN GOODMAN: I've got to see the gun.

MS. SZCZUCINSKI: So even if you believed a witness beyond a reasonable doubt, you need that gun?

VENIREMAN GOODMAN: I've got to see it.

MS. SZCZUCINSKI: Thank you, Mr. Goodman. Anybody else on the left side?

VENIREMAN DALLAS: I would have to see the gun.

MS. SZCZUCINSKI:  Hold on just a second.  That's Miss Dallas?

VENIREMAN DALLAS:  Yes

MS. SZCZUCINSKI:  So even if you believe a witness beyond a reasonable doubt.

VENIREMAN DALLAS:  I still want the gun.

MS. SZCZUCINSKI:  You still want to see the gun to require a verdict of guilt?

VENIREMAN DALLAS:  Yes.

MS. SZCZUCINSKI:  How about over here on my right side?  Miss Farias?

VENIREMAN FARIAS:  Because the charge is armed criminal action, without the gun -- yeah, I I'd need the gun.

MS. SZCZUCINSKI:  And if the instructions were to say the testimony is evidence, and you were to believe a witness beyond a reasonable doubt that that gun was used --

VENIREMAN FARIAS:  People embellish.  I don't care how much you tell them to tell the truth, people embellish.

MS. SZCZUCINSKI:  Thank you, Miss Farias.  Mr. Diggs.

VENIREMAN DIGGS:  Not to say I'd not believe that it were credible or not, but some people have gotten killed for having something in their hand and mistakenly thought it was a gun or something like that.  So that weighs out very important to me if it was real or not.  Three people could say he had a gun, but three people could mistake the facts.  Was it black, was it silver, was it a knife, a stick, a toy gun.

MS. SZCZUCINSKI:  I can see that situation.  I want you to assume for a minute that you believe beyond a reasonable doubt that there was a gun.

VENIREMAN DIGGS:  If that's what the witness says, that's understandable. I can go with that.  But there could be mistakes made.

MS. SZCZUCINSKI:  But if you do believe the witness beyond a reasonable doubt that there was gun, would you still require us to produce the gun?  Or if you believe the fact there that was used, that's okay?

VENIREMAN DIGGS:  That's enough

MS. SZCZUCINSKI: Okay. Thank you, Mr. Diggs.

THE COURT:  Keep in mind, you are entitled to disbelieve the witness.  If a witness says there was a gun, you don't have to believe it.  The question is does the State have to produce the gun in order for you to find the gentleman guilty.  That's the question.

MS. SZCZUCINSKI:  So I'm not saying right now that you have to believe everything that's coming out of the witness' mouth, but for purposes of my question assume for a minute that you do.  Would you still require it?  And I saw another hand.  Was that Mr. Miller?

VENIREMAN MILLER:  Yeah.

MS. SZCZUCINSKI:  Stand up for me, sir.  What's your feeling about that?

VENIREMAN MILLER:  I would have to see the gun.

MS. SZCZUCINSKI:  Even if you believed the witness beyond a reasonable doubt?

VENIREMAN MILLER:  Yeah.

MS. SZCZUCINSKI:  Let's say like in Mr. Farr's situation, two weeks later the guy is arrested, no gun on him, and you believe Mr. Farr beyond a reasonable doubt, that' the guy and he had a gun.  You would still require that gun?

VENIREMAN MILLER:  I believe that's what he's being charged with, yes, I would.

MS. SZCZUCINSKI:  Thank you very much, Mr. Miller.  Anybody else on my right side?  I don't see any other hands.

(Resp. Ex. A at 103:14–110:9.)

Petitioner raised this point on direct appeal to the Missouri Court of Appeals, arguing that this line of questions improperly bolstered the State's case, called for an improper commitment from the jury, and allowed the State to test its evidence in voir dire.  (Resp. Exs. C at 11, E at 4–5.)  The Court of Appeals held that petitioner failed to object any further after the prosecution rephrased the question.  The court then went on to consider the point under Missouri Supreme Court Rule 30.20, which allows for a review for plain error resulting in a manifest injustice or miscarriage of justice.  (Resp. Ex. E at 5.)  The court found that there was no plain error, because the inquiry was "nothing more

than an attempt to discover whether the potential jurors could convict someone without physical evidence." (Id. at 7.) Petitioner did not raise this issue in his Rule 29.15 post-conviction relief motion. (Resp. Ex. at F 25–55.)

As discussed above, this plain error review conducted by the Missouri Court of Appeals does not cure the procedural defect of failing to properly object and raise this issue at the trial court level. See Pollard, 28 F.3d at 889; Feger, 2014 WL 4659486, at *4.) Therefore, Ground One is procedurally barred, and should be denied.

B.      Ground Two

Petitioner argues in his second ground that the trial court abused its discretion in telling the jury to continue deliberations after there was no agreement on Counts One and Two of the indictment. (Doc. 1 at 3.) The transcript show the following discussions while the jury was deliberations,

(The Jury began their deliberations at 10:05 a.m.)

(The alternate jurors were released.)

(The following proceedings were held in the courtroom out of the presence of the jury:)

THE COURT: Let's go on the record. The Jury retired at approximately 10:05. At 10:15 they sent down their first question, which says "Can the jury see or view the transcript from yesterday's proceedings to clarify items testified?" Counsel, any suggestions on what we should say?

MS. SZCZUCINSKI: You must guided by the evidence as you remember it. [sic]

MS. TAFFEE: That's acceptable to me.

THE COURT: Okay. That's what we'll send back. So the answer would be no. Do you want to respond to the question as "No, you must be guided by the evidence as you remember it." Any problems with that?

MS. SZCZUCINSKI: No.

MS. TAFFEE: No.

THE COURT: All right.

(The following proceedings were held in the courtroom out of the presence of the jury:)

THE COURT: We are going on the record out of the hearing of the jury. The jury is deliberating. It is now 11:40 a.m. At approximately 11:30 a.m. the jury sent down a question. The question was as follows: "Question: Was the police officer that Bryan called available or considered to testify?" That's the end of the question.

Both Ms. Taaffe and Ms. Szczucinski have left the building. They left their cell phone numbers. I have spoken to both of them by cell phone and we have agreed that I will send back the following response: "This is not part of the evidence presented to you. You are to consider only the evidence presented to you."

We're sending this up at approximately 11:42 a.m.

(The following proceedings were held in the courtroom out of the presence of the jury:)

THE COURT: We are again on the record out of the hearing of the jury. At 1:50 p.m. the jury sent down another question. It is now 2:10 p.m. Their question is "Can you clarify number three of Count I. We are in agreement with number one, two, and four of Count I but we are not in agreement on number three and need clarification and how should we deliberate."

I have both counsel here and we are agreeing that we will send back the message that "you must follow the instructions as written. Please continue to deliberate."

It's now 2:10 p.m. Is that agreeable to both counsel?

MS. SZCZUCINSKI: Yes, your Honor.

MS. TAAFFE: Yes, your Honor.

THE COURT: Okay.

(The following proceedings were held in the courtroom out of the presence of the jury:)

THE COURT: We are again on the record outside the hearing of the jury. At 3:15 p.m. the jury sent down another inquiry or statement that one among them needed to leave to take a child -- pick up a child from day care. That they had reached an agreement on two of four counts. And they were looking for instruction. I sent my bailiff back up to find out a [sic] what time that juror needs to leave. And we've now sent a message back to them

saying since she has indicated four-twenty is her departure time that they should continue to deliberate until four o'clock and we'll deal with those issues at that time.

Anything else, counsel? Both attorneys are here.

MS. SZCZUCINSKI: No, your Honor.

MS. TAAFFE: No, your Honor.

THE COURT: All right.

(The following proceedings were held in the courtroom out of the hearing of the jury)

THE COURT: We are again on the record outside the hearing of the jury. It is now just approaching four o'clock, the time that I told the jury we would address their child day care and other issues. And I am told now, Miss Taaffe, that there is a motion or a record that you would like to make.

MS. TAAFFE: Yes, your Honor. At this time I would ask the Court to inquire of the jury when they're brought into the courtroom as to whether further deliberations would help them in this case. The previous note indicated that they had made verdict on two of the counts, but not on Counts 1 and 2. I would ask the Court to inquire if further deliberations would be helpful. If not, I would ask the Court to declare a mistrial on Counts 1 and 2 and take the verdicts on three and four.

THE COURT: Miss Szczucinski.

MS. SZCZUCINSKI: Your Honor, I have no position at this time. I think either option is fine.

THE COURT: I'm not going to do that. I will deny that motion and request. I am going to bring them down in a moment, which would be four o'clock. I think that they have apparently made slow but steady progress. They've sent down several inquiries and now they've indicated that they're halfway done. So I'm going to bring them back tomorrow morning and see if they can finish up. So I'll deny that request this time.

MS. TAAFFE: Thank you.

(The following proceedings were held in the courtroom in the presence of the jury:)

THE COURT: We have a jury foreman, foreperson.

JURY FOREPERSON: I am.

THE COURT:  Sir, I understand about half an hour ago you sent us down a message that one among you has a child care or a day care problem.  And I told you that we would address that at four o'clock.  So here's what I am going to do.  I want to thank you for deliberating this afternoon.  You seem to be making steady progress.  It can be difficult, but it's desirable that we try to reach a verdict.  So I don't want to interfere with anyone's day care.  I'm going to ask you to be back here tomorrow morning at nine o'clock to finish and reach verdicts on whatever you have not completed.

. . .

### THURSDAY, JULY 10, 2008

(The jury resumed deliberations a 9:00 a.m.)

(The following proceedings were held in the courtroom out of the presence of the jury:)

THE COURT:  It's Thursday morning, July 10th.  We are outside the hearing of the jury.  All jurors have returned this morning and are deliberating. And at 9:10 a.m. they sent down a question which says "May we consider the activities in the kitchen as part of Count IV, even though there was no pushing."  Neither of the attorneys is here, although I called both of them, and they both consented by telephone if I would send up the following response as follows:  "Quote, you must follow the directions and definitions contained in all the instructions period.  Apply the instructions to the evidence period." We are sending that back up at 9:30.

(Resp. Ex. A at 291:21–299:19.)[2]

This was the last question from the jury, and at 9:50 a.m. the jury returned with their verdict.  (Resp. Ex. A at 299:20–300:21.)

Petitioner directly appealed this point to the Missouri Court of Appeals, arguing that telling the jury to continue deliberating after they disclosed that they were not in agreement on Counts I and II coerced the jury into coming to a verdict in violation of the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution, as well as Article I, Sections 10 and 18(a) of the Missouri Constitution.  (Resp. Ex. C at 12.)  With regard to this point, the Missouri Court of Appeals stated,

---

[2] There are minor differences between the legal file and the transcript.  However, for the purposes of this habeas corpus petition, the differences are insignificant.  (Compare Resp. Ex. at A 291:21–299:19 with Ex. at B 69–73.)

- 13 -

[d]efendant is unclear about which alleged error he is appealing. Defendant included his arguments with respect to polling the jury and the mistrial in his motion for new trial. However, we note he did not object to any of the trial court's communications to the jury. Thus, we review alleged errors regarding these communications for plain error.

(Resp. Ex. E at 9.)

As discussed above, this plain error review conducted by the Missouri Court of Appeals does not cure the procedural defect of failing to properly object and raise this issue at the trial court level. See Pollard, 28 F.3d at 889; Feger, 2014 WL 4659486, at *4.) Therefore, ground two is procedurally barred, and should be denied.


C.      Ground Three

Petitioner argues in his third ground that his trial counsel was ineffective for not calling Earnest Basic as a witness who would impeach a state witness and provide petitioner with a valid alibi defense. (Doc. 1 at 4.) Respondent counters that this is procedurally barred because the state appellate court found petitioner failed to plead this with the requisite specificity. (Doc. 16 at 10.) Both the motion court and the Missouri Supreme Court heard this ground on its merits, (Resp. Exs. F at 60–61, I at 5–6), therefore, it is not procedurally barred and will be considered on its merits below.


D.      Ground Four

Petitioner's fourth ground argues that his appellate counsel was ineffective for not raising a sufficiency of the evidence argument regarding the firearm's capability to be used lethally. (Doc. 1 at 4–5.) Respondent argues that this ground is not properly before this court, because petitioner filed this petition after he completed his sentence for this crime. (Doc. 16 at 27.)

In order for this court to hear a state prisoner's petition for a writ of habeas corpus, he must be "in custody pursuant to the judgment of a State court . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Flittie v. Solem, 882 F.2d 325, 326 (8th Cir. 1989) (en banc) (if a prisoner is not in custody then

the court will lack subject matter jurisdiction and cannot hear the merits of the claim).  A person is "in custody" for purposes of a writ of habeas corpus if he was in custody at the time he filed his habeas petition.  Lopez v. Heinauer, 332 F.3d 507, 510 (8th Cir. 2003) (citing Carafas v. LaVallee, 391 U.S. 234, 238–40 (1968)).  "In custody" no longer means only when a person is in physical custody, but also when a person is subject to both "significant restraints on liberty because of his conviction and sentence, which are in addition to those imposed by the State upon the public generally."  Jones v. Cunningham, 371 U.S. 236, 242 (1963); West v. Stahl, 4:06 CV 646 JCH, 2007 WL 2337355, at * 1 (E.D. Mo. Aug. 16, 2007).  Restraints on liberty can often extend beyond the prison walls or beyond the imposed sentence.  See Hensley v. Mun. Ct., San Jose Milpitas Jud. Dist., Santa Clara Cnty., Cal., 411 U.S. 345, 351 (1973).  But see Maleng v. Cook, 490 U.S. 488, 491–92 (1989) (possibility of prior conviction enhance future convictions does not meet in-custody requirement for habeas corpus relief).

In petitioner's fourth ground he challenges the effectiveness of his appellate counsel regarding only his conviction for unlawful use of a weapon.  (Doc. 1 at 4–5.)  The court imposed a sentence of seven years on September 26, 2008, for this count.  (Resp. Ex. A at 39.)  When transferred to Missouri Department of Corrections custody, petitioner was given a time credit of 827 days, as he was held, pending trial, since June 21, 2006.  (Resp. Ex. J at 2.)  He completed his sentence for Count 3 on June 26, 2013.  (Id.)  Petitioner did not mail this claim until September 18, 2013.  (Doc. 1-1.)  See Rules Governing Section 2254 Cases, Rule 3 (paper filing by an inmate is considered timely filed on the date placed in institution's internal mailing system).

The guilty finding on Count 3 was not a prerequisite to finding petitioner guilty under Counts 1 and 2, robbery in the first degree and armed criminal action, respectively.  (Compare Resp. Ex. A at 61–62 with 63.)  Therefore, the conviction on Count 3 has no effect on the validity of either Count 1 or 2.

For the reasons stated above petitioner is no longer in-custody for purposes of Count 3, and thus the court lacks jurisdiction to hear petitioner's fourth ground and it should be dismissed.

E.    Cause and Prejudice

To establish legally sufficient cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with a state procedural requirement.  Maples, 132 S. Ct. at 922; Coleman, 501 U.S. at 750–52.  To establish actual prejudice, petitioner must demonstrate that the alleged errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  Ivy v. Caspari, 173 F.3d 1136, 1141 (8th Cir. 1999) (internal citations omitted); see also Charron v. Gammon, 69 F.3d 851, 858 (8th Cir. 1995) (stating that the standard of prejudice to overcome procedural default "is higher than that required to establish ineffective assistance of counsel under Strickland").

Regarding the cause requirement, petitioner argues that the State withheld some unexplained exculpatory evidence from him.[3]  (Doc. 1 at 2, 4, 6.)  The only specific evidence petitioner mentioned as being withheld by the prosecutor was the criminal history of Timothy R.  (Resp. Ex. at F 27–29, 52–55.)  This claim was only raised at petitioner's initial direct appeal in the Circuit Court for the City of St. Louis and not on appeal.  (Compare Resp. Ex. F at 25–57 with Resp. Ex. G.)  In his current federal habeas petitioner, Williams makes no attempt to relate how any alleged withholding of exculpatory evidence prevented him from preserving grounds one or two for federal habeas review.  Petitioner has not shown cause for his procedural default.  Therefore, discussion of prejudice is unnecessary.


F.    Fundamental Miscarriage of Justice

Even if petitioner cannot show cause and prejudice, a procedural default may be overcome if denial would result in a fundamental miscarriage of justice.  To demonstrate a fundamental miscarriage of justice, the petitioner may  show that he was actually

_____

[3] Respondent construed this section of petitioner's habeas petition as an additional ground for relief, prosecutorial misconduct, specifically a violation of Brady v. Maryland, 373 U.S. 83 (1963).  (Doc. 16 at 5, 11–13, 31–33.)  Petitioner subsequently voluntarily dismissed this ground, because he failed to pursue it at any level of state review.  (Doc. 22.)

innocent.  Murray v. Carrier, 477 U.S. 478, 495–96 (1986).  A habeas petitioner asserting actual innocence to support his allegations of constitutional error must do so with new, reliable evidence.  Schlup v. Delo, 513 U.S. 298, 324 (1995).  Without new evidence of innocence, even a meritorious constitutional claim is not sufficient to permit a habeas court to reach the merits of a procedurally defaulted claim.  Id. at 316.  Schlup requires that a habeas petitioner must "come forward not only with new reliable evidence which was not presented at trial, but ... come forward with new reliable evidence which was not available at trial through the exercise of due diligence."  Kidd v. Norman, 651 F.3d 947, 953 (8th Cir. 2011).  A petitioner must show that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."  Schlup, 513 U.S. at 327.

Petitioner does not allege any new evidence that would lead to a defense of actual innocence.  Petitioner's allegations of undisclosed evidence do not mention what precisely was not disclosed to him or how it would prove he is actually innocent.  Therefore, petitioner cannot show that there would be a fundamental miscarriage of justice if this court were not to set aside the procedural bar to Grounds One and Two of his petition.

This court does not have subject matter jurisdiction to hear Ground Four.  Grounds One and Two are procedurally barred, because petitioner failed to properly raise them at trial and subsequent appeals were only reviewed for plain error.  Nevertheless, Congress has authorized federal courts to consider and to dismiss the merits of procedurally barred grounds if the court concludes that the grounds are without merit.  28 U.S.C. § 2254(b)(2).  Ground Three was properly presented in state court at all levels, and, therefore, is not procedurally barred.

Thus, the undersigned has considered Grounds One, Two and Three of petitioner's federal petitioner on their merits and finds them without merit.

# IV. STANDARD OF REVIEW

This is a mixed petition with regards to the standard of review. Grounds 1 and 2 were not decided on their merits by any state court and, therefore, the pre-Antiterrorism and Effective Death Penalty Act (AEDPA) standard for habeas review governs. <u>Gringas v. Weber</u>, 543 F.3d 1001, 1003 (8th Cir. 2008) ("Because [petitioner's] apparently unexhausted claim was not adjudicated on the merits, we likely should apply the pre-AEDPA standard of review, rather than the deferential standard of 28 U.S.C. § 2254(d).") (internal citations omitted); <u>Montes v. Trombley</u>, 599 F.3d 490, 495 (6th Cir. 2010). Ground 3, however, was heard on its merits by both the Missouri Circuit Court and the Missouri Supreme Court.

## A.     Pre-AEDPA Standard

The pre-AEDPA standard requires de novo review of grounds 1 and 2 of petitioner's petition. <u>Worthington v. Roper</u>, 631 F.3d 487, 495 (8th Cir. 2011). The facts found by the state courts are to be accepted unless rebutted by clear and convincing evidence. <u>Gringas</u>, 543 F.3d at 1003 (citing 28 U.S.C. § 2254(e)(1)). However, the legal conclusions of the state court are given no deference under the pre-AEDPA standard. <u>Miller v. Fenton</u>, 474 U.S. 104, 117 (1985).

## B.     AEDPA Standard

Ground 3 was considered on the merits by the state courts. Therefore, this court will consider this claim under the AEDPA's deferential standard. The AEDPA requires that habeas relief may not be granted by a federal court on a claim that has been decided on the merits by a state court unless that adjudication:

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A state court's decision is contrary to clearly established federal law if it "arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts." Thaler v. Haynes, 559 U.S. 43, 47 (2010) (per curiam) (citation omitted). This standard is difficult to meet because habeas corpus "is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Harrington v. Richter, 562 U.S. 86, 102–03 (2011) (citation omitted). A state court's decision involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Thaler, 559 U.S. at 47.

A state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1); Wood v. Allen, 558 U.S. 290, 293 (2010). Review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. Cullen v. Pinholster, 563 U.S. 170, 180–81 (2011). Clear and convincing evidence that factual findings lack evidentiary support is required to grant habeas relief. 28 U.S.C. § 2254(e)(1); Wood, 558 U.S. at 293.

## VI. DISCUSSION

A.      Grounds under Pre-AEDPA Standard

1.      Ground 1

In Ground 1, petitioner alleges that his trial court erred in allowing the state to ask the venirepersons if they would require that the actual firearm be received in evidence to convict him. Petitioner argues this allowed the state to bolster and pre-test its case and required an improper commitment from the jury. (Doc. 1 at 2.) Respondent counters that the boundaries of voir dire, with few exceptions, is a matter of state law, and state law matters are not proper grounds to grant a writ of habeas corpus. (Doc. 16 at 14–15.)

Voir dire and its boundaries are matters left to the trial court's discretion, Mu'Min v. Virginia, 500 U.S. 415, 424 (1991), and will only be overturned by a federal court if the trial is rendered fundamentally unfair by the voir dire. See Murphy v. Florida, 421 U.S. 794, 799–800 (1975) ("The constitutional standard of fairness requires that a defendant have a panel of impartial, indifferent jurors. Qualified jurors need not, however, be totally ignorant of the facts and issues involved.") Although, there may be times when voir dire questioning could trigger a Sixth Amendment violation, questions about a juror's ability to convict based on circumstantial evidence do not result in a constitutional violation. See, e.g, Hobbs v. Lockhart, 791 F.2d 125, 129 (8th Cir. 1986); United States v. Johnson, 366 F. Supp. 2d 822, 849 ("[Neither] this court nor the parties should be precluded from asking "case-specific" questions to attempt to discover a potential juror's bias based on facts that are or are likely to be at issue in this case."); Waites v. Wallace, 4:12 CV 1152 CEJ, 2015 WL 4429754, at *7 (E.D. Mo. 2015).

In United States v. Lyons, 488 F. App'x 40 (6th Cir. 2012), the prosecutor asked jurors if they could convict without fingerprints, DNA, surveillance photos, video or audio recordings, or a written statement. 488 F. App'x at 42. The trial court then clarified the inquiry and asked the jurors whether they would consider the case based on the evidence presented, "in spite of that type of evidence not being presented?" Id. The Sixth Court of Appeals ruled:

> [T]he prosecutor's question sought not a promise to convict in the absence of physical evidence, but rather a commitment to review only the evidence presented at trial. As such, this question did not interfere with Lyons's right to an impartial jury, as each juror committed to "lay[ing] aside his impression or opinion and render[ing] a verdict based on the evidence presented in court."

Id. at 42-43 (quoting Irvin v. Dowd, 366 U.S. 717, 723 (1961)).

In petitioner Williams's case, the voir dire examination in question involved a series of questions regarding the evidence that a juror would demand be shown to find a defendant guilty and whether he or she could convict without one particular piece of

evidence, here the firearm. Defense trial counsel objected to the first, highly particular, question and the prosecutor rephrased her question into a general hypothetical one asking whether or not jurors would require a firearm to find the defendant guilty. This type of questioning regarding whether only circumstantial evidence or a lack of physical evidence would affect a juror does not trigger a Sixth Amendment violation. See Hobbs, 791 F.2d at 129. As observed by the Missouri Court of Appeals on direct appeal when evaluating for plain error only, "[t]he State's question in this case was nothing more than an attempt to discover whether the potential jurors could convict someone without physical evidence." (Resp. Ex. E at 5.) Petitioner has not shown that this line of questioning prevented him from having an impartial, indifferent jury as guaranteed by the Sixth Amendment to the U.S. Constitution. See Murphy, 421 U.S. at 799–800.

Ground 1 is without merit.


2.      Ground 2

In Ground 2, petitioner argues that the trial court abused its discretion when, rather than declaring a mistrial, it told the jury to continue deliberating after the jury informed the trial court there was no agreement on Counts One and Two of the indictment. (Doc. 1 at 3.) Respondent argues that the jury was never deadlocked, but, rather their communication with the court indicated a juror's scheduling dilemma and did not involve a deadlock situation.

A defendant is entitled to a fair and impartial jury which is not coerced or pressured to come to a verdict. See Lowenfield v. Phelps, 484 U.S. 231, 241 (1988). Unlike federal courts, a state court may inquire about the status of deliberations, and even the numerical division of a jury. United States ex. rel. Kirk v. Dir., Dep't of Corr., State of Ill., 678 F.2d 723, 727 (7th Cir.1982); Cornell v. State of Iowa, 628 F.2d 1044, 1047 (8th Cir. 1980). The key inquiry is whether the court's actions improperly coerce instead of assess the progress of deliberations. See United States v. Thomas, 791 F.3d 889, 898 (8th Cir. 2015); Cornell, 628 F.2d at 1048. Also, a trial court has significant latitude in

allowing a jury to recess during verdict deliberations.  United States v. Milam, 494 F.3d 640, 643 (8th Cir. 2007).

Petitioner's jury began deliberations at 10:05 a.m. on Wednesday, July 9, 2008. The following messages were sent between the jury and the court regarding deliberations and the Wednesday afternoon scheduling:

> (The following proceedings were held in the courtroom out of the presence of the jury:)
>
> THE COURT:  We are again on the record out of the hearing of the jury. At 1:50 p.m. the jury sent down another question.  It is now 2:10 p.m. Their question is "Can you clarify number three of Count I.  We are in agreement with number one, two, and four of Count I but we are not in agreement on number three and need clarification and how should we deliberate."
>
> I have both counsel here and we are agreeing that we will send back the message that "you must follow the instructions as written.  Please continue to deliberate."
>
> It's now 2:10 p.m. Is that agreeable to both counsel?
>
> MS. SZCZUCINSKI:  Yes, your Honor.
>
> MS. TAAFFE:  Yes, your Honor.
>
> THE COURT:  Okay.

(Resp. Ex. A at 293:13–294:6.)

In this exchange the jury did not indicate it was deadlocked or that the jurors could not agree on any of the counts.  The court did not ask about the numerical division or whether further deliberations would be futile.  Furthermore, the court did not instruct them that they must come to a verdict on all counts.  Both parties agreed with the instruction that "you must follow the instructions as written.  Please continue to deliberate."  There was nothing coercive in the court's instruction to the jury.

> (The following proceedings were held in the courtroom out of the presence of the jury:)
>
> THE COURT:  We are again on the record outside the hearing of the jury. At 3:15 p.m. the jury sent down another inquiry or statement that one

among them needed to leave to take a child -- pick up a child from day care. That they had reached an agreement on two of four counts. And they were looking for instruction. I sent my bailiff back up to find out a [sic] what time that juror needs to leave. And we've now sent a message back to them saying since she has indicated four-twenty is her departure time that they should continue to deliberate until four o'clock and we'll deal with those issues at that time.

Anything else, counsel? Both attorneys are here.

MS. SZCZUCINSKI: No, your Honor.

MS. TAAFFE: No, your Honor.

THE COURT: All right.

(Resp. Ex. A at 294:7–295:1.)

As with the first inquiry surrounding verdict deliberations, the jury did not indicate a deadlock or how it was divided on specific counts. Moreover, the jury indicated that a juror had an issue with childcare and nowhere in the communication did it indicate that they could not deliberate more. There was no coercion in this communication.

(The following proceedings were held in the courtroom out of the hearing of the jury)

THE COURT: We are again on the record outside the hearing of the jury. It is now just approaching four o'clock, the time that I told the jury we would address their child day care and other issues. And I am told now, Miss Taaffe, that there is a motion or a record that you would like to make.

MS. TAAFFE: Yes, your Honor. At this time I would ask the Court to inquire of the jury when they're brought into the courtroom as to whether further deliberations would help them in this case. The previous note indicated that they had made verdict on two of the counts, but not on Counts 1 and 2. I would ask the Court to inquire if further deliberations would be helpful. If not, I would ask the Court to declare a mistrial on Counts 1 and 2 and take the verdicts on three and four.

THE COURT: Miss Szczucinski.

MS. SZCZUCINSKI: Your Honor, I have no position at this time. I think either option is fine.

THE COURT: I'm not going to do that. I will deny that motion and request. I am going to bring them down in a moment, which would be four

- 23 -

o'clock. I think that they have apparently made slow but steady progress. They've sent down several inquiries and now they've indicated that they're halfway done. So I'm going to bring them back tomorrow morning and see if they can finish up. So I'll deny that request this time.

MS. TAAFFE: Thank you.

(The following proceedings were held in the courtroom in the presence of the jury:)

THE COURT: We have a jury foreman, foreperson.

JURY FOREPERSON: I am.

THE COURT: Sir, I understand about half an hour ago you sent us down a message that one among you has a child care or a day care problem. And I told you that we would address that at four o'clock. So here's what I am going to do. I want to thank you for deliberating this afternoon. You seem to be making steady progress. It can be difficult, but it's desirable that we try to reach a verdict. So I don't want to interfere with anyone's day care. I'm going to ask you to be back here tomorrow morning at nine o'clock to finish and reach verdicts on whatever you have not completed.

I will read you the same instruction that I've ready you during the day. It's a little bit more important tonight because you'll be going home and there actually will be TV, there actually will be Internet. I doubt there's any coverage of this case, but this is a temptation to talk about it with others and kind of deliberate at home and among your families, and you need to avoid that.

So the Court again reminds you of what you were told at the first recess of the Court. Until you retire to consider your verdict, you must not discuss this case among yourselves or with other or permit anyone to discuss it in your hearing. You should not form or express any opinion about the case until it is finally given to you to decide. Do not read, view, or listen to any newspaper, radio or television report or Internet report of this trial.

My bailiff will handle any housekeeping matters that you have. And whatever paperwork you have should be given to him for safe keeping until tomorrow. The instructions and any other paperwork you have, my bailiff will keep and it will be returned to you in the jury room tomorrow morning.

(Resp. Ex. A at 295:2–297:24.)

Here, after deliberating since 10:05 a.m., the judge was preparing to adjourn for the day. While the adjournment, due to the daycare concern of a juror, was earlier than the court preferred, there was no coercion of the jury involved in their returning the next for further deliberations. Defense counsel requested a polling of the jury to find out how close to a verdict they were and whether further deliberations would be helpful, but the court denied that request. Nothing in the communication from the jury to the court indicated a deadlock or if further deliberations would be futile. Throughout the day several jury inquiries involved not the rendering of verdicts, but involved instructions or evidence. (Resp. Ex. A at 291:24–292:18, 292:19–293:12, 293:13–294:6). This record indicated the jury was working towards its verdicts. There was no coercion in the court's actions.

THURSDAY, JULY 10, 2008

(The jury resumed deliberations a 9:00 a.m.)

(The following proceedings were held in the courtroom out of the presence of the jury:)

THE COURT: It's Thursday morning, July 10th. We are outside the hearing of the jury. All jurors have returned this morning and are deliberating. And at 9:10 a.m. they sent down a question which says "May we consider the activities in the kitchen as part of Count IV, even though there was no pushing." Neither of the attorneys is here, although I called both of them, and they both consented by telephone if I would send up the following response as follows: "Quote, you must follow the directions and definitions contained in all the instructions period. Apply the instructions to the evidence period." We are sending that back up at 9:30.

(Resp. Ex. A at 299:1–19.)

This was another general inquiry into the evidence and how to apply it to the counts charged. No deadlock was indicated by the jury's communication and neither party requested an inquiry into a deadlock. Furthermore, this indicated that the jury came back from recess and continued to successfully deliberate. A verdict was returned at 9:50 a.m., twenty minutes after the court sent up its last communication. (Resp. Ex. A at 299:20–22.)

There can be coercion in a court's communication with a jury if undue pressure is put on it to return a verdict. That was not the situation here. During the first day of deliberations, the jury made slow forward progress through the charges as indicated by its messages to the court. The court never gave a supplemental instruction for the jury to continue deliberating past an indicated deadlock, because there was no deadlock indicated by the jury. The court never inquired into the numerical split or leaning of the jury, and the court appeared uninterested in such information. At the end of the first day, the court indicated that it wanted to try and reach a verdict, but understood that an external factor (a juror's daycare concern) prevented further deliberations at that time. The court gave the standard admonishment to the jurors regarding outside communications and deliberations. Rather than force the jury to go back and return a verdict on the first day of deliberations, the court recessed and brought the jury back for a second day. There was no coercion by the court for the jury to return a verdict.

Ground 2 is without merit.

B.      Ground 3 under AEDPA Standard

In Ground 3 petitioner argues his trial counsel rendered constitutionally ineffective assistance by failing to call Earnest Basic as a witness. (Doc. 1 at 4.) Furthermore, petitioner argues that the motion court erred in refusing to hold an evidentiary hearing on this matter. (Id.) Respondent counters that the proffered testimony of Basic would not have been admissible or provided petitioner with a viable alibi defense. (Doc. 16 at 24.) This issue was presented and heard on the merits by the state courts. Therefore, this court should defer to their conclusions, unless the decision was contrary to or involved an unreasonable application of federal law as determined by the United States Supreme Court or involved an unreasonable determination of the facts. 28 U.S.C. § 2254(d).

Ineffective assistance of counsel allegations are subject to a two part test. Strickland v. Washington, 466 U.S. 668, 687 (1984). First, petitioner must show that counsel's performance fell below an objective standard of reasonableness. Id. at 687–88. Counsel's choices are assumed to be reasonable, and the petitioner must overcome this

presumption of "sound trial strategy". Id. at 689. Second, the petitioner must "affirmatively prove prejudice." Id. at 693. The underlying issue here is whether or not the testimony of Earnest Basic would have been admissible under Missouri law and whether his testimony, if admitted, would have resulted in a different verdict by impeaching state's witness Timothy R.

To answer this issue, this court should not reexamine the state courts' interpretation of Missouri law. Nunley v. Bowersox, 784 F.3d 468, 471 (8th Cir. 2015) (citing Schleeper v. Groose, 36 F.3d 735, 737 (8th Cir. 1994)). Furthermore, counsel's strategic decisions such as the decision to call or not call a witness are "virtually unchallengeable" trial decisions. See United States v. Staples, 410 F.3d 484, 488 (8th Cir. 2005); White v. Roper, 416 F.3d 728, 732 (8th Cir. 2005) (quoting Strickland, 466 U.S. at 690–91.) Failure to impeach a witness results in ineffective assistance of counsel only when "there is a reasonable probability that, absent counsel's failure, the jury would have had reasonable doubt of the petitioner's guilt." United States v. Orr, 636 F.3d 944, 952 (8th Cir. 2011) (quoting Whitfield v. Bowersox, 324 F.3d 1009, 1018 (8th Cir. 2003), vacated in part on other grounds, 343 F.3d 950, 950 (8th Cir. 2003)).

The decision not to grant an evidentiary hearing by the motion court was clearly an interpretation of state law. In denying the motion for an evidentiary hearing the Circuit Court stated,

> To be entitled to an evidentiary hearing the movant must plead facts, not conclusions which are not refuted by the record, which if true would entitle movant to relief, and the matters complained of must have resulted in prejudice. [Citations omitted] A movant is not entitled to a hearing where the motion, files and record of the case conclusively show that the movant is not entitled to relief. Rule 29.15(h); State v. Fraction, 782 S.W.2d 764, 769 (Mo. App. 1989); Welch v. State, 770 S.W.2d 441 (Mo. App. 1989). This Court has reviewed the files and transcript in this case and finds that movant has failed to allege grounds that would entitle him to relief if true and that are not refuted by the record. Movant is therefore not entitled to an evidentiary hearing.

(Resp. Ex. F at 60.)

This court should not reexamine the state court's determination of the right to an evidentiary hearing under state law.  See Nunley, 784 F.3d at 471.

When examining the claim that his counsel was ineffective for failing to call Basic and impeach Timothy R. by bringing out that Timothy R. had paid a fine for possession of marijuana, the motion court held the information Basic would have testified to was inadmissible under Missouri law.

> A witness generally may not be impeached with a mere arrest or criminal charge not yet resulting in a conviction unless one of three exceptions is show:  (1) where the inquiry would demonstrate a specific interest of the witness; (2) where the inquiry would demonstrate a witness's motivation to testify favorably for the State; or (3) where the inquiry would demonstrate that the witness testified with an expectation of leniency from the State. [Citation to Missouri court case omitted]  Movant has not directed the Court to any testimony at trial that would have opened the door to testimony regarding the witness' arrest for marijuana possession.

(Resp. Ex. F at 61.)

It is not an unreasonable application of federal law to find that counsel is not ineffective for failing to attempt to admit evidence that was not admissible under state evidentiary rules.  28 U.S.C. § 2254(d)(1); see Becker v. Luebbers, 578 F.3d 907, 916–17 (8th Cir. 2009) (affirming counsel not ineffective for not attempting to introduce inadmissible bad act impeachment evidence).   Nor was this an unreasonable interpretation of the facts as presented in the state court proceedings.   28 U.S.C. § 2254(d)(2).

As to the prejudice prong of an ineffective assistance of counsel claim, the motion court held that,

> The mere failure to impeach a witness does not automatically entitle a movant to relief.  The movant must establish the impeachment would have provided a defense or changed the outcome of the trial. [Citation to Missouri court case omitted] The Court does not believe that the outcome of movant's trial would have been changed, assuming the defense could have presented competent evidence that the witness paid a fine for possession of marijuana or that the witness would have admitted to the fine.

(Resp. Ex. F at 61.)

Here, the Missouri court did not unreasonably apply Sixth Amendment ineffective assistance of counsel law.  See Williams v. Roper, 695 F.3d 825, 832 (8th Cir. 2012) (finding correct application of Strickland requires a showing there was a "reasonable probability" of a different outcome).  The state court's decision was not contrary to established federal law.  It was reasonable for the court to find that the trial would not have been affected by the presentation that one witness had paid a fine for possession of marijuana.

The Missouri Supreme Court considered this argument as well and found first that the proffered testimony of Mr. Basic would have been inadmissible under Missouri evidentiary rules regarding impeachment evidence.  (Resp. Ex. I at 4); Williams, 386 S.W.2d at 753.  Furthermore, the court held that the testimony would neither provide Williams with a viable defense nor negate an element of any of the crimes he was convicted of.  (Resp. Ex. I at 4); Williams, 386 S.W.2d at 753.

For the reasons discussed above, neither of the Missouri Supreme Court's findings are unreasonable interpretations of federal law.

Ground 3 is without merit.

## VII.  CONCLUSION

For the reasons set forth above,

**IT IS HEREBY RECOMMENDED** that the petition of Rollan A. Williams for a writ of habeas corpus (Doc. 1) be denied and the action dismissed with prejudice.

**IT IS FURTHER RECOMMENDED** that, because petitioner has made no substantial showing that he was deprived of a constitutional right, a certificate of appealability be denied.  28 U.S.C. § 2253(c)(2).

The parties are advised that they have 14 days to file written objections to the Report and Recommendation.  The failure to file timely written objections may waive the right to appeal issues of fact.

_____/S/   David D. Noce_____
**UNITED STATES MAGISTRATE JUDGE**

Signed on June 6, 2016.